Daniel E. Fitzpatrick, J.
In the form, “ Controlled or
De-controlled,” this case asks in modern guise the query uttered by Hamlet in his famous soliloquy. In seeking the answer this court has had no less difficulty than the melancholy Dane. A distillation of the petition, answer, briefs of counsel and the statutes cited appear to have left a residue of facts. These seem to be that the landlord and tenant herein entered into a written lease on October 15, 1945 which by its terms expired on October 14,1950. Thereafter the tenant continued in possession under the comfortable security of the Business Rent Law (L. 1945, ch. 314, as amd.) particularly section 8 (as amd. by L. 1956, ch. 735, L. 1957, ch. 452). This section provides as follows: “ Grounds for recovery of possession. So long as the tenant continues to pay the rent to which the landlord is entitled, under the provisions of this act, no tenant shall be removed from any business space, by action or proceeding to evict or to recover possession * * * unless:”
Then follows the exception which confronts this court with the prongs of a dilemma. “ (gg) (1) The landlord on or after June first, nineteen hundred fifty-six, offers to enter into a lease with a tenant in possession of a store under an expired lease or tenancy or as a monthly tenant or statutory tenant for a term to commence on the first day of the month next succeeding the twentieth day after the mailing of such offer as hereinafter provided and to expire on June thirtieth, nineteen hundred fifty-eight, at a rental in the same amount as the emergency rent with respect to the store occupied by the tenant and otherwise on *1058 substantially similar terms and conditions as existing with respect to such tenancy not inconsistent with any of the provisions of this act, and such offer is transmitted by the landlord to the tenant by registered mail, and such tenant fails, neglects or refuses to execute such lease within such period of twenty days, and a further period of six months elapses subsequent to Such failure, neglect or refusal of the tenant ” (L. 1956, ch. 735).
Section 12, as amended by chapter 735 of the Laws of 1956, states as follows (third par.): “ The provisions of this act shall also be inapplicable to any store or other business space with respect to which a lease shall be hereafter entered into between the landlord and the tenant in occupancy thereof under an expired lease or tenancy or as a monthly or statutory tenant, upon the offer of the landlord for the term and otherwise as provided in subdivision (gg) of section eight of this act, subsequent to the date of expiration of such lease.” (As amd. by L. 1954, ch. 447, § 1; L. 1956, ch. 735, § 3, eff. April 17, 1956.)
After the enactment of this statute the landlord, “ on or after June first, nineteen hundred fifty-six,” more specifically on November 7, 1957, by registered mail offered to enter into a lease with the tenant for a term commencing December 1, 1957 and ending June 30, 1958 at the same rental and upon substantially similar terms as then existing with respect to the tenancy.
Both sides have stated that the tenant u failed, neglected or refused ’5 within 20 days thereafter to execute such a lease. As to which of these three methods the tenant used in declining the proffered lease this court is left in ignorance. The court concludes, however, that the offer was not acted upon. As a consequence, on July 23, 1958 a notice in writing advised tenant of the somewhat disturbing news that his rental would no longer be $82.50 per month but would thereafter be the not untidy sum of $150 per month commencing September 15, 1958. In the meantime, landlord accepted the emergency rent. On the stated date the increase demanded of the tenant was not paid. Thereafter the landlord brought this proceeding for the eviction of the tenant for nonpayment of the asked increased rental. The logical culmination of these events are thus presented to this court to be resolved.
The tenant contends under a strict construction of the statutes cited, the landlord should have done three things:
(1) On or before June 10, 1956 to have offered the tenant a lease to commence July 1, 1956 and to expire June 30, 1958, at the emergency rental under similar terms for a full two-year term;
*1059 (2) Landlord should have served a notice of termination of tenancy on or before July 14, 1958;
(3) Landlord should have commenced this proceeding on or after July 15, 1958 and should not have accepted the July 15, 1958 and August 15,1958 rent at the emergency figure of $82.50.
In reply to this the landlord urges these considerations:
(a) That the statute permits the offer to be sent “ on or after June 1st, 1956.” That the Legislature could not have intended to limit landlords to only 10 days to make the offer.
(b) If the Legislature intended such a construction why did they not amend the statute in 1957 and 1958?
(c) That no notice was necessary as premises were decontrolled by paragraph third of section 12 by tenant’s failure to execute the offered lease within 20 days, and a further lapse of six months.
We thus have, as we lawyers say, “ A clear case for statutory construction.” That it is a case for statutory construction is a conclusion with which this court heartily agrees. That it is ‘ ‘ clear ” is by no means apparent and seems to require an exercise in semantics. This court has always felt that there was one cardinal rule in the drafting of legislation: that no law should say what it means or mean what it says. To fail to recognize this would plunge the Bench and Bar into that dangerous supposition warned against by Mr. Justice Felix Frankfurter, that because the wording of a statute is clear to say the meaning is clear is pernicious over-simplification. Against such a state of affairs this court recoils. It is in this view that we approach the task at hand.
A cursory reading of the statute would seem to uphold landlord’s contention that they have done all they were required to do. This conclusion is so patently simple that one can almost see “ Caution ” violently swinging a warning light. While the sections of the Business Bent Law are to be liberally construed with a view to carrying out the legislative intent, they are also strictures on the landlord’s old common-law rights and must, therefore, be strictly construed as to what the Legislature intended to include. (Matter of McGrath [Bass], 186 Misc. 27.) Also they were intended to curb the evil of extortion and exorbitant rents in time of stress and shortage, and tenants may not be removed from possession except upon grounds specifically stated. (Borchard Affiliations v. Normandy Democratic Club, 65 N. Y. S. 2d 415; Matter of Fifth Madison Corp. [N. Y. Tel. Co.], 297 N. Y. 155.) These laws are not to be given a construction by which they may be circumvented. *1060 (Dick's Restaurant & Bar v. Rosenwasser, 195 Misc. 179, affd. 275 App. Div. 832.)
This court has made extraneous as well as cerebral effort to entice from the verbiage of the statute the legislative intent. It has been no easy task. The court has spoken to the draftsmen of the statute; it has examined New York Legislative Document (1958) No. 19, Report of the Temporary Commission to Study Rents and Rental Conditions; it has turned the ‘1 clear wording,” this way and that in order to see if the intent might not manifest itself in some unexpected fashion. The only thing the court has refrained from is magical runes and incantations, even though at times the temptation was compelling.
Should the court adopt the landlord’s view that it has complied literally with the statute, the landlord must prevail. To do so would be to add to injustice by what the British brother at the Bar expresses in the axiom: ‘ ‘ Apparently good law makes hard cases.” This court feels it is its duty to avoid such a result. Page 11 of New York Legislative Document, 3958, No. 19 (supra) says: “ The heart of the paragraph is the two-year lease provision. The qualifications which have encumbered it have served to obscure and blur its primary purpose.” In recommending revision, Legislative Document No. 19 goes on: ‘ ‘ If revised in accordance with the recommendation of the Commission, the original purpose of the statute will be preserved and will restate it unequivocally and clearly, e.g., that any statutory tenant would be able to obtain a lease of at least two years, a purpose which landlords have been able to defeat by delaying offers to lease so that the tenant was deprived of the opportunity of obtaining a full two-year lease. This runs counter to the intention of the Legislature.”
The court, therefore, holds that the intention of the Legislature was to give tenants approached under this statute the opportunity to secure themselves for two years. To hold otherwise would be to circumvent the purposes of the rent law as a whole and to put tenants not approached on a superior footing to those who were so approached long after June 1, 1956 and offered short-term leases, and as a consequence of refusal, to find themselves decontrolled and deprived of the benefits of the rent law. The court realizes that this is to limit the 1956 law to one shot only, but this is the only fair construction. It may be argued equally well that there was no amendment in 1957 and 1958 because the Legislature felt its purpose was accomplished. The construction given here is fair and reasonable; to hold to the contrary would be to encourage chicanery and *1061 sharp practice. As an ex-member of the Legislature, the court is bound to uphold its honor.
The petition is dismissed on the merits for failure to comply with the requirements of the law. The other points are not passed upon.